IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| MEDICAL DEPOT, INC. d/b/a<br>DRIVE DEVILBISS HEALTHCARE,<br><br>Plaintiff,<br><br>v.<br><br>LINAK A/S and LINAK US, INC.,<br><br>Defendants. | Civil Action No: 1:22-cv-07924<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY**

Plaintiff Medical Depot, Inc. d/b/a Drive DeVilbiss Healthcare files this Complaint seeking a Declaratory Judgment against Defendants Linak A/S and Linak US, Inc. (collectively, "Linak" or "Defendants"), and states as follows:

**NATURE OF ACTION**

1. This is an action arising under the Declaratory Judgment Act 28 U.S.C. §§ 2201 *et seq.*, and the patent laws of the United States, Title 35 of the United States Code, seeking declaratory judgment of non-infringement and invalidity of all claims of United States Patent No. 7,471,020 ("the '020 Patent")

**PARTIES**

2. Medical Depot, Inc. d/b/a Drive DeVilbiss Healthcare ("Drive Medical") is a corporation organized under the laws of Delaware with its principal place of business at 99 Seaview Boulevard, Port Washington, New York 11050.

1

3. On information and belief, Defendant Linak A/S is a Danish corporation organized under the laws of Denmark, with its principal place of business at Smedevænget 8, Guderup DK-6430 Nordborg, Denmark.

4. On information and belief, Defendant Linak US, Inc. ("Linak US") is a wholly owned subsidiary of Linak A/S and is a corporation organized under the laws of the State of Delaware, with its principal place of business at 2200 Stanley Gault Parkway, Louisville, KY 40223. Defendant Linak US may be served with process by serving its registered agent, Denise Payne at 2200 Stanley Gault Parkway, Louisville, KY 40223.

## JURISDICTION AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

6. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7. Personal jurisdiction over Defendants is proper in this District because Defendants have availed themselves of the rights and benefits of the laws of New York and have conducted business and have systematic and continuous contacts with New York. Defendants market, sell, and/or offer for sale their products nationally, including in New York, have accused Drive Medical of patent infringement via correspondence sent to Drive Medical in this District, and are alleging infringement which also takes place, *inter alia*, within this District, and therefore, Defendants have established minimum contacts with this forum. Defendants also regularly conduct business in this forum, engage in other persistent courses of conduct and derive substantial revenue from products and/or services provided in this District and in New York, demonstrating that Defendants have purposefully established substantial, continuous and systematic contacts with New York.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) at least because Defendants are subject to personal jurisdiction in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## THE PATENT AT ISSUE

9. The '020 Patent, titled "Linear Actuator," originally filed as a PCT Application on August 20, 2003, issued on December 30, 2008. The '020 Patent claims priority to foreign application DK 2002 01229, filed on August 20, 2002. A true and correct copy of the '020 Patent is attached as Exhibit A.

10. On information and belief, Linak A/S is the assignee of all right, title, and interest in the '020 Patent.

11. On information and belief, Linak US is the exclusive licensee of the '020 Patent.

12. The '020 Patent was the subject of an Ex Parte Reexamination filed by HDLS IPR Services on December 30, 2016. A Reexamination Certificate issued on November 7, 2017, confirming patentability of claims 1-5 and 9 and adding new claims 11-39 as patentable. Original claims 6-8 and 10 were not subject to examination.

13. During Reexamination, the Examiner claimed to have reviewed the prosecution history of the '020 Patent, but at no point in the Reexamination procedure did the Examiner reference any of the prior art considered or applied during the original prosecution of the '020 Patent.

14. The Reexamination of the '020 Patent only considered new foreign references and failed to consider them in combination with the originally cited prior art.

## FACTUAL BACKGROUND

15. Drive Medical was founded in 2000 and has rapidly become a leading manufacturer of durable medical equipment across the world. Among the medical equipment manufactured by

Drive Medical are hospital beds, including the Delta® Pro Homecare Bed System. Drive Medical's Delta® Pro Homecare Bed System uses linear actuators (motors) to assist with lifting and lowering the bed.

16. Linak manufactures and sells motors for use in medical products, including for use in hospital beds, like those manufactured by Drive Medical.

17. This lawsuit arises out of threats and allegations made by Linak that Drive Medical's product infringes certain claims of the '020 Patent. Linak's actions demonstrate that there is an actual controversy of sufficient immediacy to warrant judicial intervention.

18. Prior to 2021, Drive Medical purchased motors from Linak for use with Drive Medical's products. In early 2021, Linak raised their prices significantly. This led to communications between the parties regarding Drive Medical's continued purchasing and use of the Linak motors. Drive Medical ultimately discontinued purchasing from Linak in response to the price increase.

19. On or about April 27, 2021, Simon Jenkinson of Linak sent an email to Drive Medical, received by David Chen and George Luo, implicitly threatening legal action in the form of a patent infringement case if Drive Medical failed to continue purchasing from Linak. Linak highlighted a recent victory in a case against a U.S. competitor over a product which allegedly infringed the '020 Patent. Linak further indicated that they were actively reviewing the Drive Medical website, stating, "I must say from your website we see all beds still demonstrate a hand crank so I am not sure if the feature will exist in the future." Linak thus implied their belief that allegedly infringing products were being sold on the Drive Medical website or would be in the near future. Linak requested access to Drive Medical's product information for "due diligence" ahead of any "issues" which may "come up" between the parties.

20. On or about May 27, 2021, Simon Jenkinson of Linak sent another email to Drive Medical, received by David Chen and George Luo, again threatening legal action against Drive Medical for alleged infringement of the '020 Patent. Linak stated it would seek injunctive relief which "would have a significant impact on [Drive Medical's] supply chain" if Drive Medical did not cooperate with Linak's demands.

21. Sometime in 2021, Drive Medical began purchasing motors from another manufacturer, DewertOkin Technology Group Co., Ltd. ("Dewert").

22. On or about April 28, 2022, Lene Boysen, General Counsel for Linak, sent a letter to Nora Coleman, Executive Vice President and General Counsel of Drive Medical, which noted that the '020 Patent was directed to "electric linear actuators for beds that feature, among other things, a hand crank for manual operation," and that "Linak believes the Dewert Megamat MLZ linear actuator may infringe the '020 Patent."

23. In or around May 2022, a representative of Linak contacted Simon Foster of Drive Medical to notify Drive Medical that Linak believed Drive Medical's "Delta Pro bed," which incorporates a motor provided by Dewert, infringes the '020 Patent. The representative suggested that legal action against Drive Medical could be avoided via discussion with Linak and purchasing the motor from Linak instead of Dewert.

24. On or about May 23, 2022, a teleconference was held involving representatives from Linak and Drive Medical, including: Nora Coleman (Drive Medical's Executive Vice President and General Counsel), Bradley Shelowitz (Drive Medical's Outside Counsel), Simon Foster (Drive Medical's Senior Vice President of Sourcing, Planning, & Procurement), Steven Zeller (Linak's Outside Counsel), Lene Boysen (Linak's General Counsel), and Per Hohle Hjulskov (Linak A/S). The teleconference resulted in an agreement between Linak and Drive

5

Medical to attempt to reestablish a business relationship and negotiate a reasonable price for the Linak motors.

25. On or about May 24, 2022, Linak and Drive Medical entered into a mutual non-disclosure agreement ("NDA") to protect their respective technical disclosures which may occur during the negotiation process. The NDA was signed by Lene Boysen of Linak and Nora Coleman of Drive Medical.

26. As part of the ongoing discussions, on or about May 24, 2022, Linak, via outside counsel Steven Zeller, sent an email with a claim chart to Drive Medical, comparing the claims of the '020 Patent with the Dewert linear actuator incorporated into a Drive Medical bed.

27. On or about June 9, 2022, Drive Medical, via outside counsel Bradley Shelowitz, sent Linak a response to its claim chart, including exemplary defenses to Linak's allegations of patent infringement, including non-infringement and invalidity.

28. On or about August 10, 2022, Linak, via outside counsel Steven Zeller, replied to Drive Medical's June 9, 2022 response. Linak dismissed Drive Medical's positions and repeated Linak's belief that it had a strong patent infringement case against Drive Medical.

29. On or about August 23, 2022, Drive Medical, via Senior Vice President of Sourcing, Planning, and Procurement Simon Foster, sent an email to Linak (received by Chris Sprigler and Simon Jenkinson of Linak) in an attempt to reach an agreement on pricing. Drive Medical included a chart stating Drive Medical's target prices for motors being provided by Dewert in addition to the annual purchasing quantity of the motors over the previous four years.

30. Over the following 4 months, several discussions ensued and several correspondences were exchanged. On or about December 7, 2022, a teleconference was held involving representatives from Linak and Drive Medical, including: Nora Coleman (Drive

Medical's Executive Vice President and General Counsel), Simon Foster (Drive Medical's Senior Vice President of Sourcing, Planning, & Procurement), Lene Boysen (Linak's General Counsel), Chris Sprigler (Linak salesman), and Simon Jenkinson (Linak), during which Linak informed Drive Medical that they were willing to discount their quoted prices by 2-3%. Drive Medical informed Linak that they would be unable to sell its hospital beds at a price that would be competitive in the market based on the cost of the Linak motors. Drive Medical also informed Linak that while they did not expect Linak to bridge the entire gap between Linak's price and Dewert's price, 2-3% was a non-starter to reestablish a business relationship for that reason. Linak agreed to regroup internally to determine the lowest price they could offer to Drive Medical.

31. On or about December 14, 2022, another teleconference was held involving representatives from Linak and Drive Medical, including the same personnel from the December 7, 2022, call, in addition to: Per Hohle Hjulskov (Linak A/S). During the teleconference, Linak told Drive Medical that Linak discussed pricing internally and claimed to be unable to provide more than a 2-3% discount on their significantly higher prices. Drive Medical again notified Linak that it would not be possible to sell Drive Medical's hospital beds at a price that would be competitive in the market based on the cost of the Linak motors.

32. Linak concluded the December 14, 2022 teleconference by notifying Drive Medical that Linak had directed their outside counsel to prepare a draft complaint alleging at least patent infringement. Linak indicated that it would share its proposed complaint with Drive Medical in the hopes that seeing the complaint would encourage Drive Medical to understand its liability and come to a commercial resolution concerning the sale of Linak's motors. Linak indicated that they would be in touch in early January 2023.

33. The escalation by Linak to a direct threat via drafting a Complaint prompted the filing of this Declaratory Judgment action by Drive Medical.

34. On information and belief, the application that became the patent threatened for assertion by Linak (the '020 Patent) was rejected during prosecution (U.S. Pat. Appl. No. 10/524,997) in view of, *inter alia*, U.S. Pat. No. 5,673,593 to Lafferty ("Lafferty"), entitled "Overrunning Nut for Linear Actuator." A true and correct copy of Lafferty is attached as Exhibit B.

35. A true and correct copy of the May 5, 2008 final rejection of U.S. Pat. Appl. No. 10/524,997 in view of Lafferty is attached as Exhibit C.

36. During prosecution, the claims of the application that became the '020 Patent was amended to overcome prior art rejections by including "*a shaft member provided in the opening as a separate element*, said shaft member being connected at one end thereof with one end of the spindle and configured at its other end for operative reception of the end of a hand crank." *See* Ex. D, Aug. 5, 2008 Resp. to Final Rejection at 4-6 (emphasis added).

37. This amendment to the claims incorporated Examiner-indicated allowable subject matter: "[t]he prior art does not teach that the shaft member is a separate element mounted in the rear attachment (claim 2); or that the rear attachment is a separate member mounted at the end of the cabinet with a seal, and that the shaft member is likewise provided with a seal in the opening (claim 9)." *See* Ex. C at 6.

38. The Dewert motor at issue utilizes a monolithically-formed screw member rather than being a spindle having a separate shaft member coupled to its rear end.

39. After issuance, the '020 Patent was subject to an Ex Parte Reexamination.

40. During Reexamination, the Patent Office ignored the prosecution history of the '020 Patent and contradicted positions taken by the original Patent Office Examiner and Applicant during prosecution.

41. During Reexamination, the Patent Office focused on new patents, not considered during the original prosecution, with no indication that the Examiner during the Reexamination considered or examined the original prosecution history or the references cited therein. The Reexamination Examiner failed to consider all of the prior art "alone or in combination" with all of the other known art.

42. The Reexamination Examiner focused mostly on Japanese Pat. No. H9-191611 to Ohashi et al. and Japanese Pat. No. H10-213253 to Minai. The independent claims of the '020 Patent survived Reexamination and were considered patentable because the Reexamination "Examiners agree with Patent Owner that the prior art *cited in the Request*, specifically Onashi and Minai does not show or teach the rear attachment 'for attachment of the actuator in the structure in which the actuator is to be incorporated.'" *See* Ex. E, Notice of Intent to Issue Ex Parte Reexamination Certificate at 11 (emphasis added). The Notice continues, "[s]pecifically, Examiners find that none of the prior art references *cited in the Request* teaches the corresponding structures . . . ." *Id.* (emphasis added). However, Lafferty, the primary reference applied during prosecution of the '020 Patent, clearly discloses this feature.

43. Linak was aware of its own patent prosecution history during the Reexamination of the '020 Patent. Linak failed to uphold its duty of disclosure during Reexamination. Rather than remain faithful to their previous prosecution arguments and positions, Linak knowingly and willfully argued that prior art considered during Reexamination did not disclose features which

Linak knew to be disclosed by prior art identified during the original prosecution but not considered or applied by the Examiner during the Reexamination.

44. In particular, claim 1 during prosecution was clearly found to require a "shaft member" to be a separate element relative to the spindle, and agreed to by Linak when it amended its claims to incorporate allowable subject matter identified by the Examiner to overcome the identified prior art, Lafferty. However, claim 25, which was added during Reexamination, improperly enlarged the scope of at least claim 1 of the patent because claim 25 appears to qualify the meaning of "a shaft member provided in the opening as a separate element" by not necessarily requiring that the shaft member is a separate element mounted in the rear attachment and then connected to the spindle during assembly. Thus, not only does Linak contradict the previous position it took during the original examination, behavior which should be prevented by prosecution history estoppel, but Linak also enlarged the scope of its claims during Reexamination, which is not allowed under, e.g., 37 C.F.R. § 1.552.

45. The Patent Office made a significant and material error during Reexamination when the Examiner failed to consider the original prosecution history of the '020 Patent and failed to consider or apply the prior art referenced therein, including Lafferty.

46. Linak's allegation boils down to an assertion that the Dewert motors purchased by Drive Medical infringe the '020 Patent. Aside from the invalidity issues with the '020 Patent in view of the combined prior art of record in both the original examination and the Reexamination, the Dewert motors do not infringe the claims of the '020 Patent.

47. The Dewert linear actuator is built with a single, monolithically-formed drive screw.

48. The claims of the '020 Patent require, as they were amended during prosecution to overcome prior art, that "a shaft member provided in the opening *as a separate element, said shaft member being connected at one end thereof with one end of the spindle* and configured at its other end for operative reception of the end of a hand crank." *See, e.g.*, Ex. A at claim 1 (emphasis added).

49. When subject matter is disclaimed during prosecution of a patent, the patent owner cannot reclaim the subject matter when alleging infringement.

50. As such, to literally infringe the claims of the '020 Patent, an accused product would need to include a "shaft member provided in the opening as a separate element" with "said shaft member being connected at one end thereof with one end of the spindle." The Dewert motor does not have a shaft member as a separate element connected at one end to the spindle. In fact, because the Dewert motor relies for its driving element on a monolithically-formed screw member, the screw and the spindle of the Dewert linear actuator do not have "ends" that are or can be "connected" as is required by the claims.

51. During the original prosecution, claim 9 was only allowable because Linak amended a previously dependent claim to be in independent form and take advantage of the Examiner-indicated allowable subject matter. Independent claim 9 was considered patentable by the Office only because Lafferty allegedly did not disclose "the rear attachment is a separate member mounted at the end of the cabinet with a seal, and that the shaft member is likewise provided with a seal in the opening." *See* Ex. C at 6.

52. During the Reexamination, the Examiner found the above-recited feature of allowed claim 9 to be disclosed by Minai. *See* Ex. F, Reexamination Rejection at 16. In response to the Reexamination Rejection, Linak did not contest the finding in Minai of the missing element

from originally allowed claim 9. Instead, Linak argued that the art applied *in <u>Reexamination</u>* did not disclose "a rear attachment disposed in extension of the spindle opposite the activating element likewise for attachment of the actuator in the structure in which the actuator is to be incorporated." *See* Ex. G, July 20, 2017, Resp. to Reexamination Rejection at 10. Linak made no mention of the above-recited features having been found during the original prosecution of the '020 Patent in the Lafferty reference.

53. Additionally, like with claim 1, the Dewert linear actuator does not have both a "spindle" <u>and</u> a "shaft member," as required by claim 9. Instead, Dewert's linear actuator has only one monolithic piece as its driving element. Linak expressly claimed two components and cannot now reclaim subject matter which they previously disclaimed or failed to capture with their chosen claim language. Moreover, Dewert's screw is not "provided in the opening," as required by claim 9. Linak cannot show literal infringement of claim 9.

54. There is an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 concerning whether any acts by Drive Medical constitute infringement of the '020 Patent and whether the claims of the '020 Patent are valid. Absent a declaration of non-infringement and invalidity, Linak will continue to wrongfully allege that Drive Medical infringes the '020 Patent.

**COUNT I:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,471,020**

55. Drive Medical restates and incorporates each of the preceding paragraphs as if fully stated herein.

56. On information and belief, Linak A/S is the owner of the '020 Patent.

57. On information and belief, Linak US is the exclusive licensee of the '020 Patent.

58. Drive Medical's linear actuators, purchased from Dewert, do not satisfy each and every element of any of the claims of the '020 Patent. As a result, Drive Medical's linear actuators purchased from Dewert do not infringe any claim of the '020 Patent.

59. In particular, the driving element of the Dewert linear actuator is a monolithically-formed screw member rather than a spindle with a separate shaft member connected to its rear end. As such, Drive Medical cannot infringe the '020 Patent at least for the reason that the Dewert motor relied upon for use in Drive Medical hospital beds lacks "a shaft member provided in the opening *as a separate element, said shaft member being connected at one end thereof with one end of the spindle* and configured at its other end for operative reception of the end of a hand crank."

60. With respect to claim 9, Linak cannot demonstrate infringement for similar reasons to claims 1 and 25. Claim 9 expressly recites both a "spindle" and a "shaft member," while the Dewert linear actuator includes only a single monolithic screw. Linak's actions during prosecution and its decision to recite two different components in their patent claims precludes a finding of infringement by a device which utilizes only one component.

61. Linak also cannot demonstrate infringement as Dewert's screw is not "provided in the opening," as required by claim 9.

62. There exists an actual and justiciable controversy between Drive Medical and Linak concerning the non-infringement of the '020 Patent within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 as to whether Drive Medical's linear actuators purchased from Dewert infringe the claims of the '020 Patent. Absent a declaration of non-infringement, Linak will continue to wrongfully allege that Drive Medical's linear actuators purchased from Dewert infringe the '020 Patent and thereby cause Drive Medical irreparable injury and damage. As a

result, the controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement, and such a judicial declaration is necessary and appropriate so that Drive Medical may ascertain its rights regarding its linear actuators purchased from Dewert for use in Drive Medical products.

63. Drive Medical is therefore entitled to a judgment declaring that it has not infringed the '020 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

## COUNT II:
## DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,471,020

64. Drive Medical restates and incorporates each of the preceding paragraphs as if fully stated herein.

65. The '020 Patent is invalid under at least 35 U.S.C. § 103.

66. Although the '020 Patent survived an Ex Parte Reexamination, on information and belief, the Examiner during Reexamination critically erred in allowing the claims of the '020 Patent in view of prior art identified during the original prosecution and Reexamination.

67. The issued claims of the '020 Patent are obvious in view of at least the combined prior art identified by Patent Examiners during the original prosecution and the Reexamination.

68. The Patent Examiner during the Reexamination failed to consult or consider the original prosecution of the '020 Patent and references cited therein.

69. Linak failed to disclose the art referenced or arguments made during the original prosecution of the '020 Patent and took positions during Reexamination which contradicted the positions and arguments Linak made during the original prosecution.

70. With respect to claim 9, Linak's failure to disclose material aspects of the original prosecution also warrant invalidation of claim 9. During the original prosecution, the Examiner identified all but one recited feature in the Lafferty reference, which the Reexamination Examiner

then determined was disclosed in the Minai reference. In the face of a different rejection during Reexamination, Linak simply argued that Minai was missing a different recited feature that had been found in Lafferty. The Reexamination Examiner failed to consider the entire record of prior art in his obviousness analysis at least in part because Linak ignored the original prosecution when making his arguments during Reexamination. Each of the recited features of claim 9 were found in the various references identified as prior art in the original prosecution and the Reexamination. Had Linak honored their duty to disclose to the Reexamination Examiner, upon information and belief, the Reexamination Examiner would have found the combination to be obvious and claim 9 would not have been allowed as written.

71. There exists an actual and justiciable controversy between Drive Medical and Linak concerning the alleged validity of the '020 Patent within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 as to whether the '020 Patent is valid under at least 35 U.S.C. § 103. Absent a declaration that the claims of the '020 Patent are invalid, Linak will continue to wrongfully allege that it is entitled to damages and thereby cause Drive Medical irreparable injury and damage. As a result, the controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the claims of the '020 Patent are invalid as obvious in view of at least the prior art noted above, and damages are not available under the law, and such a judicial declaration is necessary and appropriate so that Drive Medical may ascertain its rights regarding its linear actuator products purchased from Dewert.

72. Drive Medical is therefore entitled to a judgment declaring that the claims of the '020 Patent are invalid under at least 35 U.S.C. §103 and Linak is not entitled to damages for infringement thereof.

## ATTORNEYS' FEES

73. Pursuant to 35 U.S.C. § 285, Drive Medical is entitled to and hereby demands its reasonable attorneys' fees in this case.

## JURY DEMAND

74. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Drive Medical respectfully requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Drive Medical respectfully requests that the Court enter a judgment in its favor and against Linak as follows:

A. A declaration and judgment that Drive Medical has not infringed and does not infringe, directly or indirectly, any claim of United States Patent No. 7,741,020;

B. That Linak, and all persons acting on its behalf or in concert with it, be permanently enjoined and restrained from charging, orally or in writing, that any claim of United States Patent No. 7,741,020 is infringed, directly or indirectly, by Drive Medical;

C. A declaration and judgment that the claims of United States Patent No. 7,741,020 are invalid;

D. A declaration and judgment that Drive Medical is the prevailing party and this case is exceptional within the meaning of 35 U.S.C. § 285 and 15 U.S.C. § 1117(a);

E. An award of reasonable attorneys' fees, expenses and costs incurred by Drive Medical in this lawsuit; and

F. Such other and further relief as this Court seems just and proper.

Dated: December 28, 2022

Respectfully submitted,

MOYLES IP, LLC

By: */s/ Jason M. Rockman*
Jason M. Rockman
New York Bar No. 4450953
Lisa J. Moyles (*pro hac vice* to be filed)
Connecticut State Bar No. 425652
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: jrockman@moylesip.com
Email: lmoyles@moylesip.com

Barry J. Herman (*pro hac vice* to be filed)
Maryland Federal Bar No. 26061
Julie C. Giardina (*pro hac vice* to be filed)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Email: Julie.Giardina@wbd-us.com

Craig Hoovler (*pro hac vice* to be filed)
Virginia Bar No. 83987
WOMBLE BOND DICKINSON (US) LLP
2001 K St. NW, Suite 400 South
Washington, DC 20006
Telephone: (202) 857-4464
Email: Craig.Hoovler@wbd-us.com

*Attorneys for Plaintiff Medical Depot, Inc., d/b/a Drive DeVilbiss Healthcare*